UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

LAWRENCE BILLIMEK,

                Defendant.

**ORDER**

22 Cr. 675 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On November 16, 2023, Defendant Lawrence Billimek pled guilty to securities fraud in connection with a long-running insider trading scheme. (Nov. 28, 2023 Minute Entry (Docket Report for 22 Cr. 675)) On May 20, 2024, this Court sentenced him to 70 months' imprisonment and three years' supervised release. (Judgment (Dkt. No. 75))

        This Court deferred its determination as to restitution until June 19, 2024, pursuant to 18 U.S.C. § 3664(d)(5). (Sent. Tr. (Dkt. No. 86) at 36:10-22; Judgment (Dkt. No. 75) at 6) Since the sentencing, the parties have made supplemental submissions addressing restitution. (See June 4, 2024 Def. Ltr. (Dkt. No. 82); June 11, 2024 Govt. Ltr. (Dkt. No. 83); June 12, 2024 Def. Reply Ltr. (Dkt. No. 84)

## BACKGROUND

        As explained at sentencing, Billimek was a senior equity trader for TIAA-CREF Investment Management. (Sent. Tr. (Dkt. No. 86) at 27:17-23) Over a six-year period between 2016 and 2022, he engaged in a front-running scheme in which he leaked inside information regarding the future trading of his employer to co-defendant Alan Williams, which Williams then traded on. (Id. at 27:24-28:2, 29:25-30:24) Williams realized illicit trading profits of more than

$47 million from the scheme, of which he paid $12 million to Billimek. (Id. at 26:14-21, 30:21-24)[1]

At sentencing, this Court found that Billimek and Williams were "equally culpable" in connection with the charged front-running scheme, and stated that the defendants would be jointly and severally liable for the total restitution amount. (Id. at 37:19-25) The Court further stated that an appropriate total restitution amount could not be determined at that time, because Billimek's counsel did not have "an opportunity to review billing records corroborating the request for attorney[s'] fees and expert fees." (Id. at 36:10-13)

In its sentencing brief, the Government contends that the victim – TIAA-CREF and its subsidiary Nuveen Investments (the "Victim") – is entitled to $38,432,621.62 in restitution, comprised of $38 million in "client impact," $310,674.12 in attorneys' fees, and $121,947.50 in expert fees. (Govt. Sent. Br., Ex. A (Dkt. No. 71-1) (Victim Impact Stmt.) at 2, 19)

As described by the Victim and Peregrine Economics ("Peregrine") – the economic analysis firm it retained – the negative "client impact" resulting from Billimek's and Williams' front-running scheme took the form of poorer execution.[2] (See Govt. Sent. Br., Ex. A (Dkt. No. 71-1) (Peregrine Rpt.) at 5) Peregrine estimates that the total harm to the Victim's

---

[1] Like Billimek, Williams has pled guilty to securities fraud. (Dec. 21, 2022 Minute Entry (Docket Report for 22 Cr. 675)) He awaits sentencing.

[2] As a result of the material, non-public information Billimek supplied to co-defendant Williams, and the trading that Williams engaged in based on Billimek's information, Billimek's "buy prices were higher and his sell orders were lower on average" than on trades he made outside of the insider trading scheme. (See Govt. Sent. Br., Ex. A (Dkt. No. 71-1) (Peregrine Rpt.) at 5) Peregrine estimates that Williams' trades – which were placed shortly before the Victim's clients' trades were executed by TIAA-CREF – negatively impacted prices for the Victim's clients by 6.4 basis points on average. (Id.) Peregrine conducted the necessary economic analysis to ascertain "client impact," and Defendant has not disputed Peregrine's analysis. (See June 4, 2024 Def. Ltr. (Dkt. No. 82) at 8)

clients amounts to $38 million. (Id.) The Victim represents that it has made its clients whole for the harm caused by the Billimek-Williams front-running scheme. (Id. (Victim Impact Stmt.) at 2)

The Victim further represents that it expended more than $1.6 million in legal and consulting fees in investigating the illegal front-running scheme. (Id. at 1) Of that amount, the Victim seeks $310,674.12 in attorneys' fees, and $121,947.50 in expert fees associated with the economic analysis. (Id.)

At the May 20, 2024 sentencing, the Court directed the Government to submit billing records to support the requested restitution award for attorneys' fees and expert fees. (Sent. Tr. (Dkt. No. 86) at 39:2-15) The Court also directed the parties to submit supplemental briefing concerning the appropriate amount in restitution for attorneys' fees and expert fees. (Id. at 39:6-15)

In a June 4, 2024 submission, Defendant states that while he does not object to a restitution award of $38 million for "client impact" (June 4, 2024 Def. Ltr. (Dkt. No. 82) at 8), he does object to the Victim's requested restitution for attorneys' fees and expert fees. According to Defendant, this Court should award only $37,720.96 in attorneys' fees and $18,000 in expert fees. (Id. at 7) Defendant also requests that the total restitution award be apportioned between him and Williams, with his liability apportioned at 25.5%, or capped at 50% of the total restitution award. (Id. at 10)

In a June 11, 2024 submission, the Government encloses a letter from the Victim's counsel seeking a total restitution award of $38,424,875.45. (See June 11, 2024 Govt. Ltr. (Dkt. No. 83); id., Ex. A (Dkt. No. 83-1)) The Victim also seeks pre-judgment interest in the amount of $8,239,702. (Id., Ex. A (Dkt. No. 83-1) at 7-8) According to the Government,

3

Billimek and Williams should be jointly and severally liable for the restitution award. (Id. (Dkt. No. 83) at 2-3)

## ANALYSIS

### I.  LEGAL STANDARD

The Mandatory Victims Restitution Act (the "MVRA") requires a defendant to reimburse a victim for, inter alia, "other expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Attorneys' fees are "other expenses" that are properly included within a restitution award. See United States v. Afriyie, 27 F.4th 161, 166 (2d Cir. 2022) (awarding attorneys' fees under the "other expenses" provision of the MVRA) (citing United States v. Amato, 540 F.3d 153, 159-60 (2d Cir. 2008)).

18 U.S.C. § 3664(e) provides that

> [a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

18 U.S.C. § 3664(e).

In Afriyie, the Second Circuit addressed what is recoverable as "other expenses" under the MVRA. The court noted that while "a victim may recover attorneys' fees it was required to incur to advance the investigation or prosecution of the offense," "only [expenses associated with] criminal investigations – not private investigations, and not civil enforcement investigations –" provide a basis for a restitution award. Afriyie, 27 F.4th at 173. Accordingly, an "SEC investigation" is not an "investigation . . . of the offense" covered by the MVRA, and

4

therefore a victim is "prohibited from recovering for its participation in [such an] investigation." Id. at 172; see also Lagos v. United States, 584 U.S. 577, 577 (2018) (stating that "investigation," as used in the MVRA, "refers to a government's criminal investigation").

The Afriyie district court awarded restitution to a victim for expenses it incurred in responding to subpoenas and document requests from the U.S. Attorney's Office and the SEC. United States v. Afriyie, No. 16 Cr. 377 (PAE), 2020 WL 634425, at *2 (S.D.N.Y. Feb. 11, 2020), aff'd in part, vacated in part, remanded, 27 F.4th 161 (2d Cir. 2022). In that case, the U.S. Attorney's Office and the SEC (1) "coordinat[ed]" investigations that "target[ed] the same conduct"; (2) issued "nearly identical" document requests to the victim; and (3) received "simultaneous productions" from the victim's counsel. Afriyie, 27 F.4th at 172.

The Second Circuit found restitution for expenses appropriate "to the extent [the expenses] involved the USAO investigation," because they were "plainly 'incurred during participation in the [criminal] investigation.'" Id. at 173 (quoting 18 U.S.C. § 3663A(b)(4)). However, it vacated the district court order to the extent that it granted restitution "as to the SEC subpoena and document request expenses," concluding that such expenses "are not recoverable as a matter of law." Id. And where attorneys' billing entries reflected "commingled" work on both the U.S. Attorney's Office and SEC investigations, the court remanded to the district court "to devise a reasonable solution concerning these commingled billing items when recalculating [] recovery." Id. at 172.

On remand, the victim "declined to seek restitution for time spent for both the SEC and USAO concurrently," because it was "unable to ascertain the precise split of time worked on either matter based on block-billed time entries." (See Jan. 17, 2023 Govt. Ltr., 16 Cr. 377 (PAE), Dkt. No. 235 at 4) (emphasis in original)

5

## II. ANALYSIS

### A. Client Impact

As discussed above, Billimek does not dispute that an award of $38 million in restitution for "client impact" is appropriate. (June 4, 2024 Def. Ltr. (Dkt. No. 82) at 8) This Court concludes that the Victim has adequately demonstrated that its clients suffered $38 million in harm, and that the Victim – which reimbursed its clients for these losses – has suffered a corresponding harm of $38 million. Restitution in the amount of $38 million for these losses is therefore appropriate.

### B. Attorneys' Fees

Defendant objects to the Victim's request for attorneys' fees associated with

(1) "general monitoring of Mr. Billimek's criminal case," because these services "were not necessary" to the criminal investigation or prosecution;

(2) block-billing (e.g., "communicate with AUSA re change of plea hearing," or "attend change of plea hearing") because such narratives "are too vague to ascertain whether the requested fees are recoverable"; and

(3) fees associated with the Victim's participation in the parallel civil investigation by the SEC.

(June 4, 2024 Def. Ltr. (Dkt. No. 82) at 4-7) (citations omitted)

In response to Defendant's objections, the Victim has withdrawn its request for fees associated with (1) the general monitoring of Billimek's case, which amount to $4,155.36; and (2) block billed time entries, which amount to $3,590.81. (June 11, 2024 Govt. Ltr., Ex. A (Dkt. No. 83-1) at 6)

Accordingly, the only attorneys' fees that remain in dispute are those associated with the Victim's participation in the SEC's civil investigation, which amount to $265,206.99.

Defendant contends that – to the extent billing entries concern work that was performed in connection with the SEC investigation – expenses associated with these tasks are

6

not recoverable as a matter of law. (June 4, 2024 Def. Ltr. (Dkt. No. 82) at 4-5) In this regard, Defendant cites billing entries that refer to "SEC request and production," "analysis of SEC priority documents," and "action items of SEC response." (Id., Ex. A)

The Victim's counsel has submitted a declaration stating, "[u]pon information and belief, [that] the references to the SEC were a shorthand" for referring to "documents [the Victim] produced simultaneously to the SEC and [the USAO]." (Krickbaum Decl. (Dkt. No. 83-1) at 11, ¶ 8) According to the Victim's counsel, the same documents were "sought by the U.S. Attorney's Office as part of its criminal investigation and prosecution," and the Victim "would have incurred the same attorneys' fees . . . even if there were no SEC investigation." (June 11, 2024 Govt. Ltr., Ex. A (Dkt. No. 83-1) at 4-5)

Even assuming that entries using the term "SEC" reflect work that was performed in connection with both the civil and criminal investigations, such entries fall within the Second Circuit's "commingled billing items" category. Afriyie, 27 F.4th at 172. In using a "shorthand" for time entries (Krickbaum Decl. (Dkt. No. 83-1) at 11, ¶ 8), the Victim's counsel made it impossible for this Court to accurately segregate recoverable expenses – those associated with the criminal investigation – from unrecoverable expenses – those associated with the SEC investigation. See Restivo v. Hessemann, 846 F.3d 547, 591 (2d Cir. 2017) (permitting "block billing" only where "the records allow the court to conduct a meaningful review of the hours requested"); United States v. Avenatti, 19 Cr. 373 (PGG), 2022 WL 452385, at *10 (S.D.N.Y. Feb. 14, 2022) ("This Court cannot now attempt to extricate recoverable expenses from non-recoverable expenses in blockbilling entries."). Accordingly, this Court's restitution order will not cover expenses for billing entries associated with the SEC's investigation.

Billing entries that do not refer to either an SEC or U.S. Attorney's Office production – but merely refer to "production requirements," "data collection," or "trade data metrics" – also fall within the "commingled" category. Afriyie, 27 F.4th at 172. This Court will not attempt to parse such vague entries in search of recoverable expenses. See Lagos, 584 U.S. at 583 (relieving district courts from the "significant administrative burdens" of resolving such "potentially time-consuming controversies as part of criminal sentencing").

After subtracting unrecoverable expenses, this Court concludes that the Victim is entitled to restitution of $37,720.96 for attorneys' fees.

C. **Expert Fees**

Defendant complains that Peregrine's billing records (1) "lack any meaningful detail" that would permit "the Court to determine whether the expenses were incurred in connection with [the Victim's] participation in the SEC investigation"; and (2) are impermissibly vague, in that they contain entries for "[a]nalyzed data and documents." (June 4, 2024 Def. Ltr. (Dkt. No. 82) at 6-7)

The Victim says that "all of the expert fees [sought] relate to Peregrine's work determining the amount of monetary loss," and "the corresponding amount of restitution owed." (June 11, 2024 Govt. Ltr., Ex. A (Dkt. No. 83-1) at 6)  The Victim also submitted a declaration from Scott Walster, Peregrine's co-founder, stating that all of the billed hours were for work aimed at "determin[ing] [whether] Nuveen and/or its clients were monetarily harmed by the criminal offense in this matter; and, if so, . . . the dollar amount of that harm." (Walster Decl. (Dkt. No. 83-1) at 14-15 ¶¶ 1-2)  Given that this analysis was necessary in order to determine an appropriate restitution award for purposes of the U.S. Attorney's Office prosecution, the Court concludes that it is a recoverable expense. See Afriyie, 27 F.4th at 167.

8

As to Defendant's complaints about vague billing entries, Defendant does not contend that entries stating "analyzed data and documents on client impact," "reviewed client impact analysis," and "client impact and prejudgment interest analysis" are impermissibly vague. (June 4, 2024 Def. Ltr., Ex. B (Dkt. No. 82)) Given that Peregrine produced only one expert report, and that the purpose of that report was to determine whether the Victim's clients suffered harm and, if so, how much harm, this Court concludes that the entries for "[a]nalyzed data and documents" (id.) – when viewed in context and in connection with other billing entries – are sufficiently concrete. See Raniola v. Bratton. No. 96 Civ. 4482 (MHD), 2003 WL 1907865, at *4 (S.D.N.Y. Apr. 21, 2003) (finding billing descriptions "such as 'case preparation' or 'meeting' . . . sufficiently concrete, when viewed in context, to permit the court to make a judgment about the reasonableness of the total hours claimed").

Accordingly, this Court's restitution order will include $121,947.50 for expert fees.

D.  **Pre-Judgment Interest**

The Victim argues that an award of pre-judgment interest in the amount of $8.2 million is necessary to compensate the Victim's clients "due to their inability to make productive use of the funds that would have been available but for Billimek's criminal scheme." (June 11, 2024 Govt. Ltr., Ex. A (Dkt. No. 83-1) at 7-8)

In the pre-sentence report (Dkt. No. 61), the Probation Department states "that pre-judgment interest should not be considered for restitution based on the difficult nature of estimating loss for [the Victim's] clients who were unable to productively use the funds that they lost as a result of the offense." (PSR (Dkt. No. 61) ¶ 36)

Given the difficulties inherent in estimating any such loss suffered by the Victim's clients, pre-judgment interest will not be awarded.

9

### E. Whether the Restitution Award Should be Apportioned or Joint and Several

This Court considered at sentencing whether its restitution award should be joint and several or apportioned. (See Sent. Tr. (Dkt. No. 86) at 37:19-25) The Court began its analysis by acknowledging that it has discretion whether to provide for joint and several liability or to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and [the] economic circumstances of each defendant." (Id. at 36:23-37:2) (citing 18 U.S.C. § 3664(h) (made applicable to the MVRA by 18 U.S.C. § 3663A(d)))

This Court then addressed United States v. Yalincak, 30 F.4th 115 (2d Cir. 2022), in which the Second Circuit court noted that where defendants have different levels of culpability, apportioned restitution might be appropriate:

> "In a scenario where two offenders caused a victim to incur a $100,000 loss, the court could require each defendant to pay the full $100,000 amount of the loss [as jointly and severally liable].
>
> Or, if the defendants' divergent contributions to the crime make it reasonable to do so, the court could apportion the restitution obligation, ordering the defendant who played a lesser role in the offense to pay, for example, $25,000 in restitution and his more culpable co-defendant to pay $75,000."

(Id. at 37:2-18) (quoting Yalincak, 30 F.4th at 122-23) This Court found, however, that Billimek and Williams were "equally culpable" in the front-running scheme, and that therefore joint and several liability for the restitution award was appropriate. (Id. at 37:19:25); see also Yalincak, 30 F.4th at 123 (stating if "the district court found that both defendants contributed equally to the victim's $100,000 loss," it "could hold both defendants jointly and severally liable for the total . . . loss").

While Billimek does not dispute that (1) "he and Mr. Williams are equally culpable for the losses suffered by Nuveen's clients"; and (2) this Court has "considerable discretion in fashioning restitution orders" under 18 U.S.C. § 3664(h), he now contends that the

10

restitution amount should be apportioned at 25.5% for Billimek and at 74.5% for co-defendant Williams because of the "economic circumstances of each defendant." (June 4, 2024 Def. Ltr. (Dkt. No. 82) at 7-10) (citations omitted)

Billimek's pre-sentence report states that he has $17.1 million in assets and a monthly income of $24,157. (PSR (Dkt. No. 61) ¶ 94) No pre-sentence report has been prepared as to Defendant Williams, but the indictment – obtained in 2022 – states that he has $36 million in assets. (Indictment (Dkt. No. 1) ¶ 18)

While the Court "may" apportion liability based on the "economic circumstances" of co-defendants, see 18 U.S.C. § 3664(h), any claims about Williams' financial circumstances are speculative, because the Probation Office has not prepared a pre-sentence report concerning Williams. Moreover, based on the incomplete record before the Court, it appears that both Billimek and Williams are wealthy and hold very substantial assets.

In arguing for an apportioned award, Billimek cites United States v. Zangari, 677 F.3d 86 (2d Cir. 2012) for the proposition that a defendant's gain "is a legitimate proxy for the amount that he should be required to pay in restitution." (See Sent. Tr. (Dkt. No. 86) at 38:4-39:1) Here, Williams "earned three times the profits from the underlying conduct" as Billimek. (June 12, 2024 Def. Reply Ltr. (Dkt. No. 85-1) at 4) (emphasis in original omitted)

But Zangari holds that "a sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual loss." Zangari, 677 F.3d at 92-93. Where "there is a direct correlation between [the defendant's] gain and [the victim's] loss," a defendant's "gain can act as a measure of – as opposed to a substitute for – the victim's loss." Id. at 93. But there is no such direct correlation here, and therefore Billimek's gain cannot be used as a proxy for the victims' actual losses.

The Court concludes that joint and several liability is appropriate in the context of this case. Billimek was at least as culpable as Williams, and given that Billimek breached his duty to his employer, he is arguably more culpable. Moreover, based on the record currently before the Court, the economic circumstances of the two defendants are not so disparate as to argue in favor of apportioned liability. Accordingly, the order of restitution will provide for joint and several liability.

## CONCLUSION

For the reasons stated above, the order of restitution will provide (1) for a total restitution amount of $38,159,668.46 for TIAA-CREF/Nuveen; and (2) that Defendants Billimek and Williams are jointly and severally liable for that amount.

The Government will submit a proposed order of restitution by June 24, 2024.

Dated: New York, New York
      June 19, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge